## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONAL CASUALTY             :        NO.
COMPANY,                      :
    **Plaintiff**             :
                             :
    **v.**                    :
                             :
REDEVELOPMENT AUTHORITY:
OF LAWRENCE COUNTY,           :
JAMES GAGLIANO, JR.,          :
DENNIS F. ALDUK,              :
JOSEPH CAMINITI,              :
W. RYAN KEGEL, and            :
JON NATALE,                   :
    **Defendants**           :
     **and**               :
THOMAS R. WHITTAKER,          :        **Complaint Filed _____**
CHRISTY L. WHITTAKER, and     :
EDNA J. HAMILTON, Executrix   :
Of the Estate of David C. Hamilton, :
    **Necessary Party Defendants**   :

## COMPLAINT FOR DECLARATORY JUDGMENT

## INTRODUCTION

This action seeks declaratory judgment from the Court with respect to the rights

and duties of National Casualty Company and Defendant Redevelopment Authority of

Lawrence County under a policy of insurance issued in 2004 by National Casualty to

the Redevelopment Authority.  National Casualty seeks a judicial determination of its

contractual duties with respect to a civil action filed against the Redevelopment

Authority in a matter currently pending before this Honorable Court at Docket

No. 2:04-CV-01092 captioned, *Whittaker, et al., v. County of Lawrence, et al.* (hereinafter, the "Underlying Action").

## I.   **THE PARTIES**

1.      Plaintiff, National Casualty Company (hereinafter "Plaintiff") is a Wisconsin corporation authorized to issue policies of insurance in Pennsylvania and maintaining its principal place of business at 8877 North Gainey Center Drive in Scottsdale, Arizona  85258.

2.      Defendant, Redevelopment Authority of Lawrence County (hereinafter, the "Authority") is a redevelopment authority organized pursuant to the Pennsylvania Urban Redevelopment Law, 35 P.S. § 1701, *et seq.*, which maintains its address at 430 Court Street, New Castle, Pennsylvania 16101-3593.

3.      Defendant James Gagliano, Jr (hereinafter, "Gagliano") is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 225 Old Hickory Road, #2229, New Castle, Pennsylvania 16102. Gagliano was, at times relevant to the Underlying Action and the instant Declaratory Judgment Complaint, the Executive Director of the Authority.

4.      Defendant Dennis F. Alduk (hereinafter, "Alduk") is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 1874 Valley Road, New Castle, Pennsylvania 16105. Alduk was, at times relevant to the Underlying

Action and the instant Declaratory Judgment Complaint, a member of the Authority's Board of Directors.

5.      Defendant Joseph Caminiti (hereinafter, "Caminiti") is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 11039 Old Princeton Road, New Castle, Pennsylvania 16105.  Caminiti was, at times relevant to the Underlying Action and the instant Declaratory Judgment Complaint, a member of the Authority's Board of Directors.

6.      Defendant W. Ryan Kegel (hereinafter, "Kegel") is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 25 Connoquenessing Terrace, Ellwood City, Pennsylvania 16117. Kegel was, at times relevant to the Underlying Action and the instant Declaratory Judgment Complaint, a member of the Authority's Board of Directors.

7.      Defendant Jon Natale (hereinafter, "Natale") is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 2421 Woodland Hills Drive, New Castle, Pennsylvania 16101. Natale was, at times relevant to the Underlying Action and the instant Declaratory Judgment Complaint, a member of the Authority's Board of Directors.

8.      Necessary Party Defendants Thomas R. Whittaker and Christy L. Whittaker (hereinafter, the "Whittakers" or collectively with Hamilton, the "Underlying Plaintiffs"), husband and wife, are adult individuals and residents of the

Commonwealth of Pennsylvania who reside at 783 Kings Chapel Road, New Castle, Pennsylvania 16105.

9.     Necessary Party Defendant Edna J. Hamilton, is the Executrix of the Estate of the late David C. Hamilton (hereinafter, "Hamilton" or collectively with the Whittakers, the "Underlying Plaintiffs") who owned property located at RD#3, Box 599, New Castle, Pennsylvania 16105, which is now part of his Estate, the taking of which by the Authority is at issue in the Underlying Action.

## II.    <u>JURISDICTION</u>

10.     This matter is a declaratory judgment action, pursuant to 28 U.S.C. §§ 2201 and 2202, based upon a contract of insurance issued by Plaintiff to the Authority, a redevelopment authority organized and existing under the laws of the Commonwealth of Pennsylvania and located in New Castle, Pennsylvania.

11.     Jurisdiction is founded upon diversity of citizenship, pursuant to 28 U.S.C. §1332(a) since there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is appropriate in the Western District of Pennsylvania pursuant to 28 U.S.C. §1391, as the insurance contract at issue was issued in the Western District, the location of the Authority is in the Western District, and the events at issue in the underlying case all took place in the Western District.

13.     An actual case and controversy of a justiciable nature exists between Plaintiff and the Authority involving the rights and obligations of those parties under the policy of insurance and dependent upon the construction of said contract of insurance, and the controversy may be determined by a judgment of this, without other, suit.

14.     All other identifiable persons or entities who have or claim any interest in the matters in controversy or who would be affected by the declarations made by this Court have been made a party to this action.

## III.   <u>FACTS</u>

### <u>(a) THE UNDERLYING CASE</u>

15.     On or about July 23, 2004, a civil complaint was filed against the Authority and others by the Whittakers, and docketed to No. 04-1092 (Doc. 1).

16.     On or about July 27, 2004, a civil complaint was filed against the Authority and others by Hamilton, and docketed to No. 04-1110 (Doc. 1).

17.     An amended complaint was filed by the Whittakers on September 15, 2005 (No. 04-1092, Doc. 11), in response to which the various defendants filed motions to dismiss (No. 04-1092, Doc. 14-16).

18.     An amended complaint was filed by Hamilton on September 15, 2004 (No. 04-1110, Doc. 10), in response to which the various defendants filed motions to dismiss (No. 04-1110, Doc. 13-16).

19.     By Order of December 9, 2004, Defendants' motions to dismiss were denied without prejudice, the two actions were consolidated to Docket No. 04-1092, the case was stayed, and civil action No. 04-1110 was closed (No. 04-1092, Doc. 22).

20.     On June 10, 2005, the Whittakers filed a second civil complaint, naming as defendants Gagliano, Alduk, Caminiti, Kegel, Natale and other individuals.  This action was docketed to No. 05-0801 (No. 05-0801, Doc. 1).

21.     Pursuant to an Order issued August 18, 2005, civil action No. 05-0801 was consolidated with civil action No. 04-1092 and stayed in accordance with the aforementioned Order of December 9, 2004.  Civil action No. 05-0801 was closed (No. 05-0801, Doc. 12).

22.     The stay of proceedings governing consolidated civil action No. 04-1092 was lifted by Order of October 15, 2007 (No. 04-1092, Doc. 68).

23.     All Underlying Defendants filed motions to dismiss the amended complaints in November of 2007 (No. 04-1092, Docs. 71-83), which were fully briefed by December 21, 2007.

24.     By Order of January 24, 2008, all motions to dismiss the amended complaints were granted, but the Underlying Plaintiffs were granted leave to re-file one unified second amended complaint on or before April 23, 2008 (No. 04-1092, Doc. 122).

25.    On April 21, 2008, the Underlying Plaintiffs filed a second amended complaint (hereinafter, the "Underlying Complaint") against all defendants (No. 04-1092, Doc. 126), a true and correct copy of which is attached hereto, marked as Exhibit "A," and incorporated by reference without admission or adoption, for purposes of the instant declaratory judgment action only.

26.    The Underlying Complaint generally avers as follows:

   a. The Authority is a redevelopment authority organized under Pennsylvania law (Exh. A, ¶ 6).

   b. Defendant Gagliano was, at all time relevant to the Underlying Complaint, the Executive Director of the Authority (Exh. A, ¶ 10).

   c. Defendant Alduk was, at all times relevant to the Underlying Complaint, a member of the Authority Board (Exh. A, ¶ 11).

   d. Defendant Caminiti was, at all times relevant to the Underlying Complaint, a member of the Authority Board (Exh. A, ¶ 12).

   e. Defendant Kegel was, at all times relevant to the Underlying Complaint, a member of the Authority Board (Exh. A, ¶ 13).

   f. Defendant Natale was, at all times relevant to the Underlying Complaint, a member of the Authority Board (Exh. A, ¶ 14).

27.    According to the Underlying Complaint, all of Defendants named therein were involved in the development or consideration of the development of 500 acres of

private property, including the Underlying Plaintiffs' properties, for a technology/business complex to be known as Millennium Park (Exh. A, ¶ 18).

28.     The Underlying Plaintiffs owned real property located in Lawrence County, Pennsylvania in the area of proposed development for Millennium Park (Exh. A, ¶¶ 25-29).

29.     In 2002 and 2003, the Lawrence County Economic Development Corporation (hereinafter, "LCEDC") actively marketed the Millennium Park site for industrial development, including the Underlying Plaintiffs' properties (Exh. A, ¶¶ 28-31).

30.     LCEDC allegedly desired to purchase the Underlying Plaintiffs' properties, which the Underlying Plaintiffs did not agree to sell (Exh. A, ¶ 34).

31.     Accordingly, LCEDC and other defendants allegedly created the Authority on February 4, 2003, for the purpose of condemning the Underlying Plaintiffs' properties and turning them over to the LCEDC (Exh. A, ¶¶ 35-43).

32.     From February 2003 through August 2003, the various Underlying Defendants are alleged to have conspired and schemed to unlawfully acquire the Underlying Plaintiffs' properties via eminent domain (Exh. A, ¶¶ 44-66).

33.     Defendants Caminiti, Alduk, Kegel, and Natale are alleged to have used their positions as Board Members of the Authority to advance the alleged illegal

scheme to acquire the Underlying Plaintiffs' properties through the use of eminent domain (Exh. A, ¶¶ 69-73).

34.    The Authority's sole corporate purpose is alleged to have been to condemn the Underlying Plaintiffs' properties for the LCEDC (Exh. A, ¶ 79).

35.    The Authority, its Board, and its Executive Director allegedly failed to comply with the requirements of the Urban Redevelopment Law, 35 P.S. § 1710, *et seq.*, in the alleged scheme to forcibly take the Underlying Plaintiffs' properties (Exh. A, ¶¶ 80-105).

36.    The Authority, its Board, and its Executive Director are alleged to have proceeded with the arbitrary, capricious and unlawful taking of the Underlying Plaintiffs' properties, which were not "blighted" and which  failed to meet the legal prerequisites for condemnation under the Urban Development Law, 35 P.S. § 1710, *et seq (*Exh. A,  ¶¶ 107-115).

37.     The condemnation is alleged to have been the product of a conspiracy involving the Authority, its Board, its Executive Director, and the other defendants named in the Underlying Complaint (Exh. A,  ¶¶ 116-128).

38.    The Authority Board Members, Defendants Caminiti, Alduk, Kegel, and Natale, are alleged to have used their positions on the Board to support and advance Defendants' illegal scheme to acquire the Underlying Plaintiffs' properties through eminent domain (Exh. A, ¶ 69).

39.     The Authority Board Members allegedly knew that the proper function of a redevelopment authority was to address properties that were old, dilapidated and deteriorated, and that none of these conditions existed in the Millennium Park area (Exh. A, ¶ 73).

40.     The Authority, its Board, and its Executive Director allegedly went through a charade of designating the Underlying Plaintiffs' properties as "blighted" so that the LCEDC could forcibly take these properties via eminent domain, failed to follow the mandates of the Urban Redevelopment Law, and acted in bad faith, as any reasonable person would have known that neither the Underlying Plaintiffs' properties nor Millennium Park, as a whole, was blighted (Exh. A, ¶¶ 83-85, 115).

41.     The Authority, its Board, and its Executive Director allegedly knew they were, through their actions in taking the Underlying Plaintiffs' properties via eminent domain, violating the Underlying Plaintiffs' protected constitutional rights (Exh. A, ¶ 146).

42.     The Authority, allegedly in an effort to further the unlawful conspiracy to violate the Underlying Plaintiffs' constitutional rights and in wholesale disregard of the Urban Redevelopment Law, filed a Complaint for Entry Upon the Property and a Petition for Preliminary Injunction against the Underlying Plaintiffs in state court (Exh. A, ¶¶ 125-128).

43.     On July 29, 2004, the Authority allegedly filed Declarations of Taking before the Lawrence County Court of Common Pleas to condemn the properties owned by the Underlying Plaintiffs (Exh. A, ¶¶ 129-130).

44.     The Underlying Plaintiffs filed objections to the Declarations of Taking for various reasons identified in the Underlying Complaint (Exh. A, ¶¶ 131-134).

45.     The Underlying Plaintiffs contend that the actions of the Authority, its Board, and its Executive Director violated their rights under the United States Constitution and the Pennsylvania Constitution, and they commenced the Underlying Action seeking redress, pursuant to 42 U.S.C. § 1983.

46.     The Underlying Complaint contains nine (9) causes of action, all of which are asserted, *inter alia,* against the Authority, its Board, and its Executive Director, as follows:

> a. Count I of the Underlying Complaint purports to assert claims against, *inter alia,* the Authority and its Board, for the deprivation of the Underlying Plaintiffs' Fifth Amendment Rights. The Underlying Plaintiffs aver that the Fifth Amendment prohibits the taking of private property for public use without just compensation being paid, and that Defendants, including the Authority and its Board, took their private property for private use in violation of the Fifth Amendment (Exh. A, ¶¶ 147-154).

b. Count II of the Underlying Complaint purports to assert claims against, *inter alia,* the Authority and its Board, for violation of the Equal Protection Clause of the Fourteenth Amendment. The Underlying Plaintiffs aver that they have been intentionally and without rational basis treated differently from others similarly situated, in that other property owners within Lawrence County who own properties that are not blighted have not had their properties taken by Defendants (Exh. A, ¶¶ 155-164).

c. Count III of the Underlying Complaint purports to assert claims against, *inter alia,* the Authority and its Board, for the deprivation of the Underlying Plaintiffs' rights to Procedural Due Process, in violation of the Fourteenth Amendment Due Process Clause. The Underlying Plaintiffs aver that Defendants, in condemning their properties, took action to deprive Plaintiffs of their property rights without notice and without following the procedural mandates of the Urban Redevelopment law (Exh. A, ¶¶ 165-170).

d. Count IV of the Underlying Complaint purports to assert claims against, *inter alia,* the Authority and its Board, for the deprivation of the Underlying Plaintiffs' rights to Substantive Due Process, in violation of the Fourteenth Amendment Due Process Clause.

Plaintiffs aver that Defendants' conduct in declaring their properties to be blighted were arbitrary, capricious, and conscience shocking. (Exh. A, ¶¶ 171-178).

e. Count V of the Underlying Complaint purports to assert claims against, *inter alia,* the Authority and its Board, for civil conspiracy. The Underlying Plaintiffs aver that Defendants engaged in a conspiracy to take their properties in violation of their constitutional rights and that such violations did, in fact, result (Exh. A, ¶¶ 179-184).

f. Count VI of the Underlying Complaint purports to assert claims against, *inter alia,* the Authority and its Board, for violation of Article 1, § 10 of the Pennsylvania Constitution, for the taking of their properties for private use without payment of just compensation (Exh. A, ¶¶ 185-189).

g. Count VII of the Underlying Complaint purports to assert claims under the Pennsylvania Constitution against, *inter alia,* the Authority and its Board, for violation of the Underlying Plaintiffs' Equal Protection Rights in the taking of their properties (Exh. A, ¶¶ 190-193).

h. Count VIII of the Underlying Complaint purports to assert claims under the Pennsylvania Constitution against, *inter alia,* the Authority

and its Board, for violation of the Underlying Plaintiffs' Procedural Due Process Rights in the taking of their properties (Exh. A, ¶¶ 94-199).

i. The second cause of action designated as Count VIII in the Underlying Complaint purports to assert claims under the Pennsylvania Constitution against, *inter alia,* the Authority and its Board, for violation of the Underlying Plaintiffs' Substantive Due Process Protection Rights in the taking of their properties (Exh. A, ¶¶ 200-205).

47.    Via their prayer for relief, the Underlying Plaintiffs seek the following:

a. Declaratory judgment that Defendants' actions violate the Fifth Amendment prohibition against unlawful takings, the Fourteenth Amendment guarantee of equal protection, the Fifth Amendment guarantee of due process and corresponding Pennsylvania Constitutional guarantees;

b. Monetary damages for loss of the quiet enjoyment of their Property;

c. Attorney's fees, costs and other related losses;

d. A permanent injunction barring Defendants, both separately and collectively, from taking any action to further their conspiracy of unlawfully taking the Property or otherwise detract from Plaintiffs' quiet enjoyment of the Property;

e. Punitive damages; and

f. Such other legal or equitable relief to which the Plaintiffs Whittakers and Hamilton may be entitled.

(Exh. A, pp. 30-31).

48.     In response to the Second Amended Complaint filed by the Underlying Plaintiffs, all of the Underlying Defendants individually filed motions to dismiss.

49.     Pursuant to Memorandum and Order of March 25, 2009 (Doc. 149), the Court stayed the Underlying Action pending final decision by the Pennsylvania Supreme Court in the appeal of the state court condemnation action that was at issue in the Underlying Complaint.   A true and correct copy of the Memorandum and Order of March 25, 2009 is attached hereto and marked as Exhibit "B."

50.     In its March 25, 2009 Memorandum, this Honorable Court recognized that the Underlying Action arises out of eminent domain proceedings initiated by the Authority against properties owned by the Underlying Plaintiffs (Exh. B, p. 1).

51.     The Court acknowledged that the Underlying Plaintiffs' claim in their federal action that the Underlying Defendants' actions violated the Fifth Amendment prohibition against unlawful takings, the Fourteenth Amendment guarantee of equal protection, the Fifth Amendment guarantee of due process, and corresponding Pennsylvania Constitutional guarantees (Exh. B, pp. 1-2).

52.     The Court noted that the same contentions were at issue in the state court condemnation appeal, and the Underlying Action, all of which arose from the taking of the Underlying Plaintiffs' properties by Defendants (Exh. B, pp. 4-5).

53.     By Order of June 30, 2009 (Doc. 154), the Court noted that the Supreme Court of Pennsylvania had denied the Authority's Petition for Allowance of Appeal and directed the parties to enter into mediation.

## (b) THE NATIONAL CASUALTY POLICY

54.     Plaintiff issued a Public Entity policy of insurance to Defendant Authority, designated as Policy Number PKO 0001077, effective June 8, 2004 through June 8, 2005 (hereinafter, the "Policy").  A certified copy of the 2004-2005 Policy[1] is attached hereto as Exhibit "C."

55.     The Policy provided Public Officials Liability Coverage, which was claims-made coverage.

56.     The Policy contained Common Liability Definitions and Exclusions which provide, in relevant part, as follows:

---

[1] Page numbers have been inserted by counsel at the bottom, right corner of each page of the Policy for ease of reference. All citations to the Policy in this Complaint reference these page numbers.

**PUBLIC ENTITY POLICY**

**COMMON LIABILITY EXCLUSIONS AND COMMON LIABILITY DEFINITIONS**

The Coverage Forms shown below are subject to the following Common Liability Exclusions and Common Liability Definitions:

….

**Public Officials Liability Coverage Form (Claims Made Coverage)**

….

Please refer to the Common Policy Declarations to determine which of these coverages applies to your insurance policy.

**A.     COMMON LIABILITY EXCLUSIONS**

The following exclusions apply to the liability coverages designated in the Common Policy Declarations.  Refer to the individual coverage forms for additional exclusions.

This policy does not apply to:

….

(Exh. C, p. 8)

6.     Eminent Domain

Any injury or damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain, inverse condemnation, adverse possession, right of prescription or dedication by adverse use or by whatever name used, whether "claim(s)" is made directly against any insured or by virtue of any agreement entered into by or on behalf of any insured.

….

(Exh. C, p. 10)

57.     The Policy further contained a Public Officials Liability Coverage Form, which provided, in relevant part, as follows:

## PUBLIC ENTITY POLICY

## PUBLIC OFFICIALS LIABILITY COVERAGE FORM
## CLAIMS MADE COVERAGE

Various provisions in this policy restrict coverage.  Please read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we," "us" and "our" refer to the insurance company shown on the Common Policy Declarations as the insurer.

Within this Coverage Form the work "insured" means any person or organization qualifying as such under SECION III – PUBLIC OFFICIALS LIABILITY – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning.  Refer to SECTION VI – PUBLIC OFFICIALS LIABILITY – DEFINITIONS.

….

## SECTION I – COVERAGES

1.   INSURING AGREEMENT

We will pay on behalf of the insured all "loss" resulting from "public officials wrongful act(s)" but only with respect to "claims" first made against the insured during the "policy period" or Extended Reporting Period.  The "public officials wrongful act(s)" must occur within the "coverage territory."

2.   DEFENSE AND SUPPLEMENTARY PAYMENTS

We will have the right and duty to defend any "suit" against the insured even if any of the allegations of the "suit" are groundless, false or fraudulent.  We may make such investigation of any "claim" or "suit" as we deem expedient.  We will not be obligated to pay any "claim" or judgment or to

defend any "suit" after the applicable limit of our liability has been exhausted by payment of judgments or settlements.

(Exh. C, p. 19)

....

## SECTION II – EXCLUSIONS

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:

....

2.      Arising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured;

3.      Brought about or contributed to by fraud, dishonesty, bad faith or malicious act(s) of an insured; however, notwithstanding the foregoing, the insured will be protected under the terms of this Coverage Form, as to any "claim(s)" upon which "suit" may be brought against them by reason of any alleged fraud, dishonesty, bad faith or malicious ac(s) on the part of any insured, unless a judgment or other final adjudication thereof adverse to such insured will establish that acts of fraud, dishonesty, bad faith or malicious act(s) committed by such insured were material to the cause of action so adjudicated;

....

8.      Arising out of:

        a.      Any "public officials wrongful act" which takes place prior to the "policy period" if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim;" or

....

(Exh. C, p. 20)

17.     For any damages arising out of land use planning or municipal zoning;

....

(Exh. C, p. 17).

**SECTION III – PUBLIC OFFICIALS – WHO IS AN INSURED**

Each of the following is an Insured:

1.      You;

2.      All persons who were, now are, or will be your lawfully elected, appointed or employed officials;

3.      Members of commissions, boards or other units operated by you…

(Exh. C, p. 21)

**SECTION VI – PUBLIC OFFICIALS LIABILITY – DEFINITIONS**

Whenever used in this Coverage Form, the following words have these meanings:

1.      "Claim" means a written notice from any party that it is their intention to hold an insured responsible for "loss" resulting from a "public officials wrongful act" covered by this Coverage Form.

                                                    ….

3.      "Loss" means any monetary amount which the insured is legally obligated to pay as a result of "public officials wrongful act(s)" covered by this Coverage Form and will include, but not be limited to, judgments and settlements, but "loss" will not include fines imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Coverage Form will be construed.

                                                    ….

(Exh. C, p. 23)

5.      "Public officials wrongful act" means:

        Any actual or alleged:

        a.      Error or omission, neglect or breach of duty;

b.      Violation of civil rights protected under 42 USC 1981 et sequential; or

c.      Violation of any state civil rights law;

by you or which arises out of the discharge of duties for you, individually or collectively.

6.      "Suit" means a civil proceeding in which monetary damages are alleged because of a "public officials wrongful act" to which this Coverage Form applies.  "Suit" includes:

a.      An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.      Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(Exh. C, p. 24).

## (c)  RESERVATION OF RIGHTS

58.     Plaintiff has been providing a defense to the Authority, its Executive Director and its Defendant Board Members in the Underlying Action, pursuant to a Reservation of Rights issued September 21, 2004.  A true and correct copy of the Reservation of Rights letter is attached hereto, marked as Exhibit "D," and incorporated by reference herein as though set forth in full.

59.     The Authority, its Executive Director and Board Member Defendants were informed on September 21, 2004, that Plaintiff would provide a full and

complete defense in the Underlying Action, but that Plaintiff was reserving the right to assert all defenses to coverage under the Policy (Exh. D, p. 5).

60.    The September 21, 2004 Reservation of Rights letter informed the Authority, its Executive Director and Board Member Defendants of the Eminent Domain Exclusion contained in the Common Liability Exclusions and Common Liability Definitions (Exh. D, p. 2).

61.    The letter further informed the Authority, its Executive Director and Board Member Defendants of the Exclusions contained in the Public Officials Liability Coverage Form for deliberate violations of law and/or for claims brought about by fraud, dishonesty, bad faith or malicious acts (Exh. D, p. 3).

62.    Plaintiff informed the Authority, its Executive Director and Board Member Defendants that:

> …[S]hould the court enter judgment in favor of the [Underlying] Plaintiff[s] for any of those allegations or prayers in the Complaint which are excluded from coverage, this company will not be in a position to honor those judgements. Under the circumstances, you may wish to retain counsel, at your own cost, to associate with the selected counsel to defend this suit and those portions not within the coverage.  This is not a statement that you are required to retain such counsel, only your right to do so.

> National Casualty Company is reserving the right to assert all
> defenses to coverage under the policy. In investigating the
> claim, defending any suit, or attempting any compromise
> settlement, National Casualty Company is not waiving any
> rights or admitting any obligation under the policy.

(Exh. D, p. 5).

## IV.  CAUSES OF ACTION:

### COUNT I

63.    Plaintiff incorporates paragraphs 1 through 62 of this Complaint by reference as if fully set forth at length herein.

64.    Plaintiff has no duty to indemnify Defendant Authority or any of its Defendant Board Members against any of the causes of action asserted against them in the Underlying Action, pursuant to the clear and unambiguous terms of the Policy.

65.    The Court in the Underlying Action authorized the Underlying Plaintiffs to file one consolidated, amended complaint asserting all of their claims and causes of action against all of the named Underlying Defendants (No. 04-1092, Doc. No. 122).

66.    The Second Amended Complaint (Underlying Complaint) was filed in response, on April 21, 2008 (Exh. A).

67.    All of the claims and causes of action asserted against the Authority and its Board Members in the Underlying Complaint arise from state court eminent domain proceedings commenced and prosecuted by the Authority against the Underlying Plaintiffs.

68.     The Policy provides coverage for "loss"[2] arising from "public officials' wrongful acts,"[3] including from alleged violations of civil rights,  **if** they are covered by the Public Officials Liability Coverage Form.

69.     Pursuant to Common Liability Exclusion No. 6, the coverage provided under the Public Officials Liability Coverage Form (and the other Coverage Forms shown on Page 8 of the Policy) does not apply to:

> 6.     Eminent Domain
>
> Any injury or damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain, inverse condemnation, adverse possession, right of prescription or dedication by adverse use or by whatever name used, whether "claim(s)" is made directly against any insured or by virtue of any agreement entered into by or on behalf of any insured.
>
> ....

(Exh. C, p. 10).

70.     An insurer must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy.  *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1094 (E.D. Pa. 1994, aff'd without opin., 37

---

[2]   "Loss" means any monetary amount which the insured is legally obligated to pay **as a result of "public officials wrongful act(s)" covered by this Coverage Form**...(Exh. C, p. 23) (emphasis added).

[3]   "Public officials wrongful act" means:
Any actual or alleged: (a.) Error or omission, neglect or breach of duty; (b.) Violation of civil rights protected under 42 USC 1981 et sequential; or (c.) Violation of any state civil rights law; by you or which arises out of the discharge of duties for you, individually or collectively (Exh. C, p. 24).

F.3d 14585 (3d Cir. 1994)); *Heffernan & Co. v. Hartford Ins. Co.,* 614 A.2d 295, 298 (Pa. Super. 1992).

71.    Takings of property which violate § 1983 are exercises of eminent domain. *SSL of Ohio, Inc., v. Scottsdale Indemnity Company,* 341 F. Supp. 2d 825, 837 (N.D. Ohio 2004).

72.    There is no coverage afforded under the Policy for any of the claims asserted against the Authority, its Executive Director, or its Board Members, due to the operation of the Eminent Domain Exclusion.

73.    Plaintiff has no duty of indemnity to the Authority, its Executive Director, or its Board Members, with respect to any of the claims asserted against them in the Underlying Action, in which the Court has ordered all parties to participate in Mediation (No. 04-1092, Doc. 154).

WHEREFORE, Plaintiff, National Casualty Company, respectfully requests that this Honorable Court enter an Order declaring the following:

> Plaintiff, National Casualty Company, owes no duty of indemnity to the Redevelopment Authority of Lawrence County, its Executive Director, James Gagliano, Jr., or its Board Members, Dennis F. Alduk, Joseph Caminiti, Ryan Kegel, or Jon Natale,  in the Underlying action captioned, *Thomas R. Whittaker, et al., v. County of Lawrence, et al.,* filed in the United States District Court for the Western District of Pennsylvania and docketed to No. 2:04-CV-001092.

## COUNT II

74.     Plaintiff incorporates paragraphs 1 through 73 of this Complaint by reference as if fully set forth at length herein.

75.     Pursuant to Section II of the Public Officials Liability Coverage Form, which contains Policy Exclusions:

**SECTION II – EXCLUSIONS**

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:
....
2.      Arising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured;

(Exh. C, p. 20).

76.     The Underlying Complaint alleges that the Authority's Executive Director and Board Members knowingly conspired with the other Underlying Defendants, in bad faith, to declare the Underlying Plaintiffs' properties blighted so that they could be taken for the LCEDC, where no blight conditions actually existed and where the Authority Defendants knew their actions violated the Urban Redevelopment Law, 35 P.S. § 1710, *et seq.,* and the Underlying Plaintiffs' constitutional rights.

77.     Plaintiff has no duties of defense or indemnification for the civil rights claims asserted against the Authority, its Executive Director, or its Individual Board Members in the Underlying Complaint, where all such violations are alleged to have

been committed deliberately by the Individual Authority Defendants, with their knowledge and consent, in knowing violation of the state statute and the Underlying Plaintiffs' constitutional rights.

WHEREFORE, Plaintiff, National Casualty Company, respectfully requests that this Honorable Court enter an Order declaring the following:

> Plaintiff, National Casualty Company, owes no duty of indemnity to the Redevelopment Authority of Lawrence County, its Executive Director, James Gagliano, Jr., or its Board Members, Dennis F. Alduk, Joseph Caminiti, Ryan Kegel, or Jon Natale, in the Underlying action captioned, *Thomas R. Whittaker, et al., v. County of Lawrence, et al.,* filed in the United States District Court for the Western District of Pennsylvania and docketed to No. 2:04-CV-001092.

## COUNT III

78.    Plaintiff incorporates paragraphs 1 through 77 of this Complaint by reference as if fully set forth at length herein.

79.    Pursuant to Section II of the Public Officials Liability Coverage Form:

**SECTION II – EXCLUSIONS**

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:

....

3.    Brought about or contributed to by fraud, dishonesty, bad faith or malicious act(s) of an insured; however, notwithstanding the foregoing, the insured will be protected under the terms of this Coverage Form, as to any "claim(s)" upon which "suit" may be brought against them by reason of any alleged fraud, dishonesty, bad faith or malicious ac(s) on the part of any insured, unless a judgment or other final adjudication thereof adverse to such insured will establish that acts of fraud,

> dishonesty, bad faith or malicious act(s) committed by such insured were material to the cause of action so adjudicated;
>
> ....

(Exh. C, p. 20).

80.     The Underlying Complaint alleges that the Authority's Executive Director and Board Members knowingly conspired with the other Underlying Defendants, in bad faith, to declare the Underlying Plaintiffs' properties blighted so that they could be taken for the LCEDC, where no blight conditions actually existed and where the Authority Defendants knew their actions violated the Urban Redevelopment Law, 35 P.S. § 1710, *et seq.,* and the Underlying Plaintiffs' constitutional rights.

81.     Plaintiff has no duties of defense or indemnification for the civil rights claims asserted against the Authority, its Executive Director, or its Individual Board Members in the Underlying Complaint, where all such violations are alleged to have been committed deliberately by the Authority Defendants with their knowledge and consent, fraudulently, in bad faith, and in knowing violation of the Underlying Plaintiffs' constitutional rights.

WHEREFORE, Plaintiff, National Casualty Company, respectfully requests that this Honorable Court enter an Order declaring the following:

> Plaintiff, National Casualty Company, owes no duty of indemnity to the Redevelopment Authority of Lawrence County, its Executive Director, James Gagliano, Jr., or its Board Members, Dennis F. Alduk, Joseph Caminiti, Ryan Kegel, or Jon Natale,   in the

Underlying action captioned, *Thomas R. Whittaker, et al., v. County of Lawrence, et al.,* filed in the United States District Court for the Western District of Pennsylvania and docketed to No. 2:04-CV-001092.

## COUNT IV

82.    Plaintiff incorporates paragraphs 1 through 81 of this Complaint by reference as if fully set forth at length herein.

83.    Pursuant to Section II of the Public Officials Liability Coverage Form, which contains Policy Exclusions:

### SECTION II – EXCLUSIONS

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:

….

8.     Arising out of:

    a.    Any "public officials wrongful act" which takes place prior to the "policy period" if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim;"

(Exh. C, p. 20).

84.    According to the Underlying Plaintiffs, efforts by the Underlying Defendants to wrongfully take their land commenced in 2002 and, by 2003, the LCEDC was actively marketing the Plaintiffs' properties as part of the Millennium Park site (Exh. A, ¶¶ 28-29).

85.    When efforts to purchase the Underlying Plaintiffs' properties were unsuccessful, various Underlying Defendants allegedly devised a scheme by which

they would create the Authority for the purpose of condemning the properties and turning them over to the LCEDC (Exh. A, ¶ 35).

86.     The Underlying Complaint alleges that the Authority was formed in February 4, 2003, for the sole purposes of illegally taking the Underlying Plaintiffs' property under a "blight pretext." (Exh. A, ¶ 43).

87.     On February 25, 2003, the Authority, by and through its Board Members, allegedly entered into an agreement with the LCEDC to condemn the Underlying Plaintiffs' properties (Exh. A, ¶ 116).

88.     On July 23, 2003, the Authority allegedly held its first meeting at which its Board Members passed a redevelopment plan to further the "common scheme" of taking the Underlying Plaintiffs' properties and retained "special eminent domain counsel" to further the plan (Exh. A, ¶¶ 62-63).

89.     All eminent domain actions undertaken by the Authority, its Executive Director, and/or its Board Members are alleged to have been performed for the benefit of the LCEDC, rather than in furtherance of any legitimate redevelopment goals by a legitimate redevelopment authority (Exh. A, ¶ 71).

90.     From February of 2003 through August of 2003, the Authority Defendants are alleged to have knowingly conspired with the other Underlying Defendants, in bad faith, to declare the Underlying Plaintiffs' properties blighted so that they could be taken for the LCEDC, where no blight conditions actually existed

and where the Authority Defendants knew their actions violated the Underlying Plaintiffs' constitutional rights (Exh. A, ¶¶ 44-66).

91.    At a September 11, 2003 meeting, the Lawrence County Planning Commission is alleged to have adopted a Redevelopment Area Plan based upon the false findings of blight by the Authority (Exh. A, ¶¶ 98-99).

92.    On September 17, 2003, the Authority, through its Board Members, is alleged to have passed a resolution accepting and approving the Redevelopment Plan, which falsely indicated that the Underlying Plaintiffs' properties were blighted, without any prior notice to the Underlying Plaintiffs (Exh. A, ¶ 100)

93.    During an April 28, 2004 meeting, the Authority, through its Board Members, allegedly passed Resolutions approving an Amended Redevelopment Area Plan which adversely affected the Underlying Plaintiffs' properties, without providing them advance notice (Exh. A, ¶¶ 104-105).

94.    The Authority's sole corporate purpose is alleged to have been to condemn the Underlying Plaintiffs' properties for the LCEDC, in furtherance of the alleged unlawful and unconstitutional scheme of all Underlying Defendants (Exh. A, ¶ 79).

95.    The Authority, its Executive Director and its Board Members are alleged to have commenced and significantly advanced the alleged illegal scheme to take the Underlying Plaintiffs' properties prior to the Policy's effective period of June 8, 2004.

96.     The Authority, its Executive Director and its Board Members allegedly knew, during this time, that their actions were contrary to the Urban Redevelopment Law, 35 P.S. § 1701, *et seq.*, and violative of the Underlying Plaintiffs' constitutional rights.

97.     Plaintiff has no duties of defense or indemnification for the civil rights claims asserted against the Authority, its Executive Director, and/or its Individual Board Members in the Underlying Complaint, where all such violations are alleged to have arisen from actions taken prior to the commencement of the applicable policy period and the Authority Board Members and Executive Director knew, prior to the commencement of the policy period, that claims were likely to arise from their actions.

WHEREFORE, Plaintiff, National Casualty Company, respectfully requests that this Honorable Court enter an Order declaring the following:

> Plaintiff, National Casualty Company, owes no duty of indemnity to the Redevelopment Authority of Lawrence County, its Executive Director, James Gagliano, Jr., or its Board Members, Dennis F. Alduk, Joseph Caminiti, Ryan Kegel, or Jon Natale,  in the Underlying action captioned, *Thomas R. Whittaker, et al., v. County of Lawrence, et al.,* filed in the United States District Court for the Western District of Pennsylvania and docketed to No. 2:04-CV-001092.

## COUNT V

98.     Plaintiff incorporates paragraphs 1 through 97 of this Complaint by reference as if fully set forth at length herein.

99.    The plaintiff has no duty to defend the Authority, its Executive Director or its Defendant Board Members in the Underlying Action.

100.    An insurer has a duty to defend whenever allegations asserted against its insured state a claim to which the policy potentially applies, even if the allegations are groundless, false or fraudulent. *American Contract Bridge League v. Nationwide Mutual Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir. 1985) (quoting *Gedeon v. State Farm Mutual Auto. Ins. Co.,* 410 Pa. 55, 188 A.2d 320 (1963)).

101.    However, where the underlying claims fall within a clear and unambiguous exclusion to coverage, a duty to defend does not exist.  *Harrison v. Aetna Life & Casualty*, 473 A.2d 636 (Pa. Super. 1984).

102.    Once the duty to defend is recognized by an insurer, the insurer must continue to defend until it can show affirmatively that any possible recovery would be outside the policy.  *Erie Ins. Exchange v. Transamerica Ins. Co.*  533 A.2d 1363, 1368 (Pa. 1987).  The duty to defend terminates when the insurer confines the possibility of recovery to claims outside the coverage of the policy.  *Strouss v. Fireman's Fund Ins. Co.,* 2005 U.S. Dist. LEXIS 2639, *25 (E.D. Pa. Feb. 22, 2005).   The "duty to defend remains with the insurer until facts sufficient to confine the claims to liability not within the scope of the policy become known to the insurer. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994).  **where does the quote end?**

103.   When assessing the duty to defend, the Court must read the <u>factual</u> allegations of the complaint, accept them as true, and ask whether they state a claim for damages to which the policy potentially applies. *Erie Ins. Exchange*, 533 A.2d at 1368. It is the nature of the claim alleged, rather than the details of the injury alleged, that controls this analysis. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 668 (Pa. Super. 1997).

104.   The labeling of the Underlying Plaintiffs' claims as "civil rights violations" or "constitutional violations" is not dispositive to the analysis of Plaintiff's duty to defend; rather, the Court must analyze the factual averments giving rise to the claims asserted against the Authority and its Defendant Board Members. *See Roman Mosaic, supra.*

105.   All of the causes of action pled in the Underlying Complaint arise from the taking of the Underlying Plaintiffs' properties via eminent domain proceedings commenced and prosecuted by the Authority.

106.   Common Liability Exclusion No. 6 (Eminent Domain) excludes from coverage under the Policy all nine (9) causes of action asserted by the Underlying Plaintiffs against the Authority and/or its Board Members.

107.   Section II of the Public Officials Liability Coverage Form contains Exclusions from coverage and provides that Plaintiff "will not be obligated to make any payment nor to defend any 'suit' in connection with any 'claim' made against

the insured" that falls within the eighteen (18) enumerated exclusions set forth in

Section II (Exh. C, p. 20, Section II).

108.   The enumerated exclusions contained in Section II of the Public

Officials Liability Coverage Form are supplemented by the Common Liability

Exclusions contained in the Policy, which states, in pertinent part:

### COMMON LIABILITY EXCLUSIONS AND COMMON LIABILITY DEFINITIONS

The Coverage Forms shown below are subject to the following Common Liability Exclusions…:

**Public Officials Liability Coverage Form (Claims Made Coverage)**
….
**A.   COMMON LIABILITY EXCLUSIONS**

The following exclusions apply to the liability coverages designated in the Common Policy Declarations.  Refer to the individual coverage forms for additional exclusions.

This policy does not apply to:
….
(Exh. C, p. 8)

6.   Eminent Domain

Any injury or damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain, inverse condemnation, adverse possession, right of prescription or dedication by adverse use or by whatever name used, whether "claim(s)" is made directly against any insured or by virtue of any agreement entered into by or on behalf of any insured.
….
(Exh. C, p. 10).

109.   Plaintiff is not "obligated to make any payment nor to defend any 'suit' in connection with any 'claim' made against the insured" Authority (Exh. C, p. 20, Section II) for "any injury or damage arising out of or resulting from a taking that involves or is in any way related to the principles of eminent domain…" (Exh. C, p. 10, ¶ 6).

110.   Where the language of the insurance policy links the duty to defend with a possible duty to indemnify, the insurer is not bound to defend where it cannot be bound to indemnify, regardless of when the duty to indemnify comes to an end. *Commercial Union Ins. Co. v. Pittsburgh Corning* , 789 F.2d 214, 218 (3d Cir. 1986); *Essex Ins. Co. v. Kennedy*, 60 Fed. Appx. 367 (3d Cir. March 5, 2003); *Strouss*, 2005 U.S. Dist. LEXIS **25-26.

111.   Once an insurer assumes the defense of an action against the insured, it is estopped from denying liability under the policy unless it issues a timely reservation of rights that fairly informs the insured of its position.  *Beckwith Machinery Co. v. Travelers Indemn. Co.*, 638 F. Supp. 1179, 1187 (W. D. Pa. 1986); *International Communication Materials, Inc. v. Employer's Insurance of Wausau*, 1996 U.S. Dis. LEXIS 21825 **14-15 (W.D. Pa. May 29, 1996).

112.   If an insured has timely reserved its rights and it is determined that an insurer cannot be bound to indemnify its insured as to claims asserted, the insurer may withdraw its defense in the underlying litigation if it does so in an orderly

fashion and absent prejudice to the insured.  *Pittsburgh Corning*, 789 F.2d at 218; *Strouss,* 2005 U.S. Dist. LEXIS 2639 at *26.; *Commercial Union Ins. Co.*, 789 F.2d at 220.

113.   In the instant case, the initial complaint was filed by the Underlying Plaintiffs on July 23, 2004 (No. 04-1092, Doc. 1).  Plaintiff issued its Reservation of Rights letter on September 21, 2004,  specifically notifying the Authority of the Policy Exclusions for Eminent Domain claims and claims brought about by violation of law or by fraud, dishonesty, bad faith or malicious acts (Exh. D, p. 3).

114.   Via its September 21, 2004 letter, Plaintiff reserved its right to assert all defenses to coverage under the Policy, including the aforementioned Exclusions to coverage, and notified the Authority of its right to retain counsel to associate with the counsel selected by Plaintiff to defend the suit to protect the Authority's rights as to portions of the suit that were not within coverage afforded under the Policy (Exh. D, p. 5).

115.   Plaintiff assigned attorney Suzanne B. Merrick, Esquire, of the law firm of Thomas, Thomas & Hafer to defend the Authority and its Board Members in the Underlying action.

116.   The Authority independently retained Samuel P. Kamin, Esquire, to represent its interests in the Underlying Action.

117.   Although the Underlying Action has been on the docket since 2004, the case has been stayed for the majority of that time and Rule 12(b)(6) motions to dismiss the Second Amended Complaint are still pending.

118.   Plaintiff is able, under these circumstances, to engage in an orderly withdrawal from the defense.

119.   Plaintiff has no further duty of defense to the Authority, its Executive Director, or its Board Members with respect to any of the claims asserted against them in the Underlying Action, in which the Court has ordered all parties to participate in Mediation (No. 04-1092, Doc. 154).

WHEREFORE, Plaintiff, National Casualty Company, respectfully requests that this Honorable Court enter an Order declaring the following:

> Plaintiff, National Casualty Company, owes no further duty of defense to the Redevelopment Authority of Lawrence County, its Executive Director, James Gagliano, Jr., or its Board Members, Dennis F. Alduk, Joseph Caminiti, Ryan Kegel, or Jon Natale,  in the Underlying action captioned, *Thomas R. Whittaker, et al., v. County of Lawrence, et al.,* filed in the United States District Court for the Western District of Pennsylvania and docketed to No. 2:04-CV-001092.

Respectfully submitted,

Lavery, Faherty, Young & Patterson, P.C.

/s/ *Frank J. Lavery, Jr.*

By:_____

Frank J. Lavery, Jr., Esquire
225 Market Street, Suite 304
P.O. Box 1245
DATE: 8/21/09                          Harrisburg, PA 17108-1245
(717) 233-6633 (telephone)
(717) 233-7003 (facsimile)
Atty No. PA42370
flavery@laverylaw.com
Attys for Plaintiff,
   National Casualty Company